IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL MARSHALL, | ) | |
| ID # 01727779, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:14-CV-4258-D (BH) |
| | ) | |
| LORIE DAVIS,[1] Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>

Pursuant to *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I.  BACKGROUND

Michael Marshall (Petitioner) challenges his conviction for aggravated assault in Cause No. F10-12634-Y and deadly conduct in Cause No. F10-12635-Y.  The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

### A.      <u>Trial and Appeal</u>

On November 17, 2010, the State indicted Petitioner for aggravated assault and deadly conduct.  (Doc. 13-3 at 5; doc. 13-11 at 8.)[2]  He pleaded not guilty and was tried before a jury in both cases in the Criminal District Court #7 of Dallas County, Texas, on June 27-29, 2011.  (Doc. 13-4 at 3-4.)

---

[1] Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

The evidence at trial was summarized by the state appellate court as follows:

Balch Springs police officer Trey Ward testified that, on October 22, 2010 at approximately 8:30 p.m., he received a report of a shooting at a beer store. Ward proceeded to the beer store where he saw a man lying in the parking lot. The man appeared to have a gunshot wound on his right buttocks. "There was a little bit of blood and stuff on his jeans." After calling for medical attention, Ward questioned store employees in an effort to determine if there was a "person around with a gun. Employees told Ward "a vehicle had pulled up and the person had rolled out of the vehicle into the parking lot." Ward spoke to the shooting victim, Forris Barton [also known as Trey], who said "Mike" shot him. Ward spoke to the victim's companion, LeeAnn Maestas, who also referred to the shooter as "a subject named Mike" who drove a blue pickup truck. Ward examined Barton's vehicle and noticed bullet holes in the car's left rear and right door. Ward traced the paths of the bullets and found a bullet hole in the back of the driver's seat and collected a bullet from the "seat or on the floor by the seat" on the right side of the vehicle.

Barton identified appellant in court and testified he had met appellant "about a month" before the shooting. The first time they met, Barton went to appellant's house "to buy some dope" and traded some surveillance cameras to appellant "for some dope." After their initial meeting, Barton went to appellant's house "a couple times a week." Barton testified appellant drove a blue "old school pickup truck." At some point, Barton got behind, "as far as money," with appellant, and Barton started selling drugs for appellant's drug supplier, "Jamie." Barton didn't know if he was "stepping on [appellant's] toes" at that point.

On the night of the shooting, Barton and Maestas were in Maestas' car driving over to Jamie's house to pay her some money Barton owed her. When they arrived, appellant's girlfriend, Amanda, was in the living room, and this concerned Barton. Barton went to the back bedroom, paid Jamie some money, and left with Maestas in her car. About a block away, appellant drove up in his truck and tried to run Maestas off the road. Appellant came from in front of Maestas' car and "tried to clip us off the side of the road into the yard." Appellant "clipped" Maestas' car and "jammed us on the side of the house in the front yard at like an angle." Appellant was "talking about ... you going to pay my money and all of this," and he waved a pistol. Appellant was "real pissed off, real sweaty, real angry," and Barton told Maestas to "just go." Barton got a clear look at appellant and had no doubt as to his identity.

Maestas "proceeded to head off," and appellant started following, getting closer and closer. At that point, Barton heard a pistol shot. The shot hit the car, and Maestas "like jerked." Barton unbuckled his seat belt and turned around and tried to block Maestas. Barton could see appellant getting closer and saw him "constantly in and out of the window," but he was not looking directly at appellant when he shot. However, Barton testified there was no doubt in his mind who was behind him and who "did the shot." Barton heard a second and a third shot and felt a "hot sting in [his] body." Maestas pulled up at the beer store, and Barton "just fell out." Barton later had surgery to remove the bullet, and he had to have a colostomy bag

2

which he still had at the time of trial.

*Marshall v. State*, Nos. 05-11-00939-CR & 05-12-00070-CR, 2013 WL 1819983, slip op. at *1-2 (Tex. App.–Dallas, April 30, 2013).

The jury found Petitioner guilty of each offense and sentenced him to 60 years' imprisonment for aggravated assault and 25 years' imprisonment for deadly conduct, with the sentences to run concurrently.  (Doc. 13-3 at 41; doc. 13-11 at 52.)  The judgments were affirmed on appeal.  *Marshall v. State*, 2013 WL 1819983.

**B.     State Habeas Proceedings**

Petitioner filed petitions for discretionary review (PDR) on July 16, 2013, and they were refused.  *Marshall v. State*, PD-0607-13, PD-0608-13 (Tex. Crim. App. August 21, 2013).  He did not file a petition for writ of certiorari with the Supreme Court.  Petitioner's state habeas applications were signed on March 24, 2014, and they were received by the state court on April 10, 2013.  (Doc. 13-21 at 6, 26; doc. 13-25 at 6, 25.)  Counsel submitted an affidavit in response to Petitioner's claims of ineffective assistance of counsel.  (Doc. 13-21 at 131; doc. 13-25 at 130).  The state habeas court issued findings of fact and conclusions of law on May 29, 2014.  (Doc. 13-21 at 126; doc. 13-25 at 125.)  On August 20, 2014, the state habeas applications were denied without written order.  (Doc. 13-18; doc. 13-22); *see Ex parte Marshall*, WR-28,126-02, WR-28-126-03 (Tex. Crim. App. Aug. 20, 2014).

**C.     Substantive Claims**

On December 3, 2014, Petitioner filed separate federal habeas petitions challenging each conviction and raising identical grounds that were subsequently consolidated.  (docs. 1, 9; *see also* No. 3:14-CV-4260-D, doc. 1.)  He raises the following grounds for relief:

3

(1) Counsel was ineffective for failing to object to a police officer's testimony as to other witnesses' credibility; and

(2) Counsel was ineffective for failing to urge the court that Petitioner was incompetent to stand trial.

Respondent filed a response on April 10, 2015. (Doc. 14.) Petitioner filed a reply brief on May 7, 2015. (Doc. 15.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established

federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his trial counsel was ineffective by (1) failing to object to a police officer's testimony as to other witnesses' credibility, and (2) failing to urge the court that Petitioner

was incompetent to stand trial.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

Courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A petitioner must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

A.      **Testimony Regarding Witnesses' Credibility**

Petitioner claims counsel should have objected when Officer Ward testified about the credibility of statements that Barton and Maestas made to him.

Officer Ward testified that he spoke with Barton and Maestas separately at the scene, and Maestas provided a written statement.  (doc. 13-7 at 17-18.)  They only referred to the shooter as "Mike."  (*Id*. at 18.)  He described the scene and the bullet holes and physical evidence he found at the scene, which was consistent with what they told him.  (*Id*. at 18-24.)  He testified:

> Q:  . . . [Y]ou said you separated these two?
>
> A:  Yes.
>
> Q:  And you talked to both of them?
>
> A:  Yes.
>
> Q:  Was there anything that was inconsistent or that caught your attention or made you wonder or think, hey, these people are lying or anything of that nature?
>
> A:  No, sir.

(*Id*. at 25.)  Petitioner contends counsel should have objected to the last question.

In response to the state habeas corpus petition, counsel submitted an affidavit stating: "Petitioner complains that I failed to object to improper bolstering of the investigating officer in response to a question by the prosecutor.  In fact, such question and answer are permissible."  (doc. 13-21 at 131; doc. 13-25 at 130.)  The state habeas court believed counsel, found that his failure to object was sound trial strategy, and concluded that Petitioner did not prove deficient performance or prejudice.  (doc. 13-21 at 128, 129; doc. 13-25 at 127, 128.)  The Court of Criminal Appeals denied the habeas applications without written order.  (doc. 13-18; doc. 13-22.)

The determination of a witness's truthfulness lies solely within the jury's

province.  *Ycount v. State*, 872 S.W.2d 706, 710 (Tex. Crim. App. 1993).  Texas Rule
of Evidence 702 prohibits expert witnesses from directly testifying that a particular
witness is truthful. Tex. R. Evid. 702; *see Yount*, 872 S.W.2d at 711; *Schutz v. State*,
957 S.W.2d 52, 59 (Tex. Crim. App. 1997).  Non-expert testimony may be offered
to support the credibility of a witness by offering an opinion or reputation evidence
as to the witness's character for truthfulness or untruthfulness, but lay witnesses may
not testify to the witness's truthfulness in the particular allegations.  *See* Tex. R.
Evid. 608(a)(1); *Schutz*, 957 S.W.2d at 72.

*Salinas v. State*, 368 S.W.3d 550, 555 (Tex. App. — Houston [14th Dist.] 2011).  A police officer

may testify about matters that led him to investigate a suspect, but the officer may not testify about

the credibility of accusations.  *Fuller v. State*, 224 S.W.3d 823, 834 (Tex. App. — Texarkana 2007).

A witness's testimony about whether a person's statement was consistent is not improper testimony

about the witness's belief regarding that person's credibility.  *See Martinez v. State*, No. 08-12-

00191-CR, 2014 WL 3763649 at *1 (Tex. App. — El Paso July 30, 2014); *Dauben v. State*, No. 10-

13-00044-CR, 2014 WL 2566469 at *2 (Tex. App. — Waco June 5, 2014.)

The first part of the question asking about inconsistencies was proper.  A witness may not

testify that there was nothing in someone's demeanor or in the information that person provided that

indicated the person was not being truthful, however.  224 S.W.3d at 835.  The last part of the

question, regarding whether there was anything that made him think the witnesses were lying, and

the answer, were improper.

Even assuming for purposes of the analysis that counsel's performance was deficient, the

state court could have reasonably concluded that Petitioner was not prejudiced.  *See Mays v.*

*Stephens*, 757 F.3d 211, 215 (5th Cir. 2014) ("'[T]here is no reason for a court deciding an [IAC]

claim to approach the inquiry in the same order or even to address both components of the inquiry

if the defendant makes an insufficient showing on one.' [*Strickland*], 466 U.S. at 697, 104 S.Ct.

2052. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' *Id*.").

On cross-examination, Officer Ward testified that Maestas was unable to provide a full name for the suspect. (*Id*. at 26.) Maestas said Mike was driving a blue truck, but she did not say that she saw Mike. (*Id*. at 28-29.) Barton said that he only knew the suspect as "Mike," and that his roommate owed Mike money. (*Id*. at 30.) Officer Ward was not aware that a drug deal between Barton and Petitioner had gone bad. (*Id*. at 29.)

Barton testified on cross-examination that he told the same story in court and to the police. (*Id*. at 69-70.) He then admitted that he did not tell the police that he saw Petitioner or that there was a drug-buying incident. (*Id*. at 70, 73-74.) He admitted that he was lying when he testified on direct examination that he told the police the same story he told in court. (*Id*. at 71.) He told the police the shooter was someone named "Mike," and he was vague about details when he talked to the police. (*Id*. at 74.) He said he lied to the police because he did not want his family to know he was using drugs again. (*Id*. at 70, 75.) On redirect examination, he clarified that he lied to the police and said his roommate owed Petitioner money, rather than telling them that he owed the money to Petitioner. (*Id*. at 77.)

Barton admitted his trial testimony was not consistent with what he told the police. Officer Ward's testimony, that he had no reason to believe Barton and Maestas were lying to him, was undercut when Barton admitted he lied to Ward. Barton and Maestas did not fully identify the suspect to Ward, telling him only that it was someone named Mike.

There was also testimony about the credibility of a statement Barton gave to Detective Allen Bird, who interviewed Barton three days after the shooting. (*Id*. at 86.) He believed Barton's story.

(*Id*. at 92.)   There was no objection to that testimony, and Petitioner has not raised a ground regarding that testimony.   Barton told Detective Bird that the shooter was "Mike."   (*Id*. at 88.) Barton told Detective Bird that "they" owed Petitioner money for drugs.   (*Id*. at 95.)   Detective Bird was not aware that Barton lied to him.   (*Id*. at 92.)   Despite Detective Bird's testimony that he believed Barton's story, there was evidence that Barton had not been completely truthful to him.

In closing argument, the prosecutor did not argue that Officer Ward believed Barton and Maestas.   He argued that Maestas's statement was consistent with Barton's, according to Officer Ward.   (*Id*. at 136.)   That aspect of his testimony was not improper.   *See Dauben v. State*, 2014 WL 2566469 at *2.   Defense counsel argued Barton's credibility problem based on his admission that he lied to the police.   (*Id*. at 128-29.)

Further, there was other evidence that pointed to Petitioner's guilt.   Detective Bird interrogated Petitioner after he was arrested.   (*Id*. at 96.)   He was shown a photograph of Barton, but he denied knowing him.   A few months after the shooting, Petitioner wrote a letter to Barton from jail.   (*Id*. at 43.)   Petitioner said he hoped there was no animosity between them, and he said he needed Barton to call his attorney.   (*Id*. at 44.)   Petitioner apologized for their past and said, "United we stand.   Divided we fall."   (*Id*.)   He promised to have a birthday celebration for Barton, which indicated that they knew each other, in contradiction to Petitioner's statement to Detective Bird that he did not know Barton.   (*Id*.)

Based on Barton's admission that he lied to Officer Ward, the fact that Barton and Maestas were not forthcoming about the suspect's identity, other evidence of Petitioner's guilt, and the lack of argument about Officer Ward's allegedly improper testimony, Petitioner has not shown that there is a reasonable probability that but for counsel's failure to object to Officer Ward's allegedly

improper testimony, the outcome would have been different.  Petitioner has not shown that the state

court's rejection of this claim was unreasonable.

## B.  <u>Competency</u>

Petitioner alleges that counsel failed to assert his incompetency to stand trial.  He relies on

affidavits stating that counsel had been told that Petitioner had psychological problems, that he had

executed a power of attorney, that he was unable to concentrate, that his understanding of what was

going on around him was very limited, and that he could not make decisions on his own.  (doc. 13-

21 at 56-66; doc. 13-25 at 55-65.)

Due process requires that a criminal defendant be competent to stand trial before he is

prosecuted.  *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996).  The appropriate test is whether a

defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of

rational understanding—and whether he has a rational as well as factual understanding of the

proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402 (1960); *see also* Tex. Code

Crim. Proc. art. 46B.003.  To prove prejudice for counsel's failure to raise an issue that the petitioner

was incompetent, he must demonstrate that there is a reasonable probability that but for counsel's

failure to raise the issue, he would have been found incompetent to stand trial.  *See Felde v. Butler*,

817 F.2d 281, 282, 283 (5th Cir. 1987).

Counsel's state habeas affidavit stated:

. . . Petitioner's allegation is that he turned down a three (3) year plea offer before
trial because he was incompetent to accept it since he had provided a written Power
of Attorney to his sister.  In fact, Petitioner had previously turned down a
misdemeanor plea offer, against my advice, because he was on parole and did not
want his parole revoked.  Furthermore, Petitioner was legally competent to make his
own decisions during the time that I represented him but chose not to follow my
advice.  . . . Petitioner claims that I did not complain that he was incompetent to
stand trial or have him evaluated for competency.  Having practiced law for almost

20 years, I do not, and did not believe that there was an issue of competency.

(Doc. 13-21 at 131; doc. 13-25 at 130.)

As discussed, the state habeas court found that counsel was "trustworthy and worthy of belief," and that Petitioner did not prove deficient performance or prejudice. (Doc. 13-21 at 128, 129; doc. 13-25 at 127, 128.) The state habeas court found that counsel "did not believe, based on his nearly 20 years of experience, that [Petitioner] was incompetent to stand trial. . . . Rather, [Petitioner] refused to accept counsel's advice regarding accepting the plea bargain offer of three years confinement due to his parole status. In fact, [Petitioner] chose not accept [counsel's] advice recommending that [Petitioner] accept a plea bargain offer of a misdemeanor reduction." (Doc. 13-21 at 129; doc. 13-25 at 128.) The Court of Criminal Appeals denied the habeas applications without written order. (Doc. 13-18; doc. 13-22.)

The affidavits in support of Petitioner's claim stated that his understanding of what was occurring around him was very limited. They did not state that Petitioner lacked a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and that he lacked a rational as well as factual understanding of the proceedings against him, however. *See Carter v. Johnson*, 131 F.3d 452, 461 (5th Cir. 1997) (psychiatrist's affidavit stating that petitioner's history of head injuries, mental retardation, and brain damage impaired his ability to make mature judgments, appreciate the consequences of his behavior, and reflect in advance on the appropriateness of his actions did not show that petitioner was incompetent). Counsel stated that Petitioner was legally competent and that he did not believe there was an issue of competency. He also stated that Petitioner made the decision not accept a plea offer because he did not want his parole revoked.

At a pretrial hearing, in response to questions from the court, Petitioner said he was a citizen of the United States, he understood the charges against him, and he understood his rights as explained by the court.  (Doc. 13-5 at 4-7.)  The court asked if he wanted to accept the state's plea offer or have a jury trial, and he said he wanted a jury trial.  (*Id*. at 5, 7.)  During trial, the court explained to Petitioner his right to testify.  Petitioner acknowledged that he discussed the matter with counsel and said he was not going to testify.  (Doc. 13-7 at 108.)  The record indicated that Petitioner understood the proceedings against him; it did not indicate that he was incompetent.

The Court of Criminal Appeals could have concluded that Petitioner did not prove that counsel's performance was deficient for failing to raise an issue about competency and that he did not prove he was incompetent.  Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## IV.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## V.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO ORDERED** this 21st day of November, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

14